# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **BETTY FULLER GOREE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 16-0417-N** |
| ) | |
| **NANCY A. BERRYHILL**[1], ) | |
| **Social Security Commissioner** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g) Plaintiff, Betty Goree, ("Goree" or "Plaintiff") seeks judicial review of an adverse social security ruling denying supplemental security income. (Docs. 1, 18). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (See Docs. 22, 23). The parties moved to waive oral argument and their request was granted. (See Docs. 21, 24). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

---

[1] Nancy A. Berryhill has replaced Carolyn Colvin and is now the acting Social Security Commissioner.

# PROCEDURAL BACKGROUND

Plaintiff protectively applied for supplemental security income on May 1, 2013. (Doc. 18 at 1; Tr. 179)[2]. Plaintiff alleged a disability onset date of February 15, 2012. (Doc. 17; Fact Sheet). Her application was initially denied on July 24, 2013, after which she requested a hearing. (Doc. 18 at 1; Tr. 112-115). Plaintiff attended a hearing before an Administrative Law Judge ("ALJ") on July 15, 2014, and the ALJ rendered an unfavorable decision on January 12, 2015. (Doc. 18 at 1; Tr. at 11-33, 125-51 ).

At the time of her application, Plaintiff was thirty eight years old, had attended, but not completed, the twelfth grade, and had previous work history as a cosmetologist. (Doc. 17; Tr. at 57). Plaintiff alleges she is disabled due to depression/dysthymic disorder, high blood pressure, diabetes, back pain (broad based protrusion at L4-5 with radiculopathy; disc bulge L5-S1), hip pain, chronic keloid pain, anxiety/nervousness, obesity, side effects from medication, and chronic pain syndrome. (Doc. 17). On January 12, 2015, an ALJ denied benefits after determining that Plaintiff was capable of performing a limited range of light work. (Tr. at 20). Plaintiff requested review of the hearing decision, but the Appeals Council denied the request on June 13, 2016. (*Id.* at 1-6).

---

[2] This is Plaintiff's second application for social security benefits. An ALJ denied Plaintiff's initial application on February 14, 2012. In May 2013, Plaintiff filed the application that is the subject of this action, alleging that the day after she was denied, her condition significantly worsened to the point she was no longer able to work. On March 22, 2013, the Appeals Council upheld the denial. (Tr. at 22).

2

Plaintiff asserts that the following grounds for error: (1) the ALJ erred in failing to follow the Eleventh Circuit's pain standard, (2) the ALJ's decision is not supported by substantial evidence; and (3) the ALJ failed to include all of Ms. Goree's limitations in the hypotheticals posed to the vocational expert ("VE"). (Doc. 18 at 1). Defendant has responded to—and denies—these claims. (Doc. 19, generally).

**STANDARD OF REVIEW**

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is

supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations

4

omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## DISCUSSION

At step two of the sequential process, the ALJ found that Plaintiff had severe impairments of keloids, diabetes mellitus, hypertension, lumbar disc disease with spondylosis/osteoarthritis, obesity, chronic pain syndrome, and dysthymic disorder (versus major depression) (20 CFR 416.920(c)). (Tr. at 16). At step three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR, 416.920(d), 416.925 and 416.926)." (*Id.* at 17). The ALJ then determined Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that on a function-by-function basis, the claimant can occasionally push-pull with upper extremities. She cannot climb ladders, ropes, or scaffolds. She cannot crawl. She can occasionally climb ramps and stairs and crouch. She can frequently reach except she can only occasionally overhead reach. She must avoid concentrated exposure to extreme temperatures. She must avoid all exposure to dangerous machinery and unprotected heights. Mentally, she can perform simple, routine and repetitive tasks. She can maintain attention and concentration to perform such tasks for two-hour increments throughout the workday. She can have casual contact with the general public throughout the workday.

(Tr. at 20). With the help of a vocational expert, the ALJ then determined, at step five, that Plaintiff was capable of performing her past relevant work as a day worker and hand packer as previously performed by the claimant. It was additionally determined that Plaintiff was capable of performing other jobs which existed in the national economy and that Plaintiff was not disabled. (*Id.* at 27-28).

Plaintiff asserts that the following grounds for error: (1) the ALJ erred in failing to follow the Eleventh Circuit's pain standard, (2) the ALJ's decision is not supported by substantial evidence; and (3) the ALJ failed to include all of Ms. Goree's limitations in the hypotheticals posed to the vocational expert. (Doc. 18 at 1). Defendant contends the ALJ's followed the pain standard, that his decision was based on substantial evidence, and that there were no deficiencies with the vocational hypotheticals or the vocational expert's testimony. (Doc. 19, generally). The undersigned will address each contention of error in turn.

6

## A. Eleventh Circuit's Pain Standard

Pain is not amenable to objective measurement. *See* 20 C.F.R.§ 416.928. As a result, the Eleventh Circuit in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. The pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005); see 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223. If a claimant satisfies these criteria, an ALJ must explain the reasons for discrediting the claimant's allegations of subjectively disabling symptoms. *Dyer*, 395 F.3d at 1210-11. "It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

In assessing the credibility of an individual, the following factors should be considered:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also SSR 96-7p.

Plaintiff asserts that the ALJ failed to take into consideration any of the seven factors that an ALJ must consider in assessing the credibility of an individual's statements pursuant to 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and SSR 96-7 and ignored multiple records which resulted in a determination that is not supported by substantial evidence. (Doc. 18 at 2-3, 5). In support of her position, Plaintiff states that the ALJ extensively focused on the records of Dr. De La Torre who only treated Plaintiff's keloids and that the ALJ failed to cite multiple other records from Marion Clinic and Dr. Davis, covering the same period of time that show Plaintiff's complaints stemming from her diabetes, hypertension, depression, low back pain, and severe debilitating pain from the keloids. (Doc. 18 at 3). Namely, Plaintiff contends the ALJ completely ignored the following notations in Plaintiff's medical records:

> (1) Marion Clinic Records (Tr. 691-693) - "She has been on numerous medications related to pain associated with the keloid scarring. She has had injections for the pain. She has had anti-inflammatory

8

medications, Tylenol with Codeine and Lortab and fentanyl patches, none of which seemed to help keep her pain away. She is requesting pain management physician and I am surprised that [the] UAB physicians have not referred her that direction but apparently they have not." It was also noted Plaintiff was anxious, crying worried about constantly being in pain and stated "patient is experiencing significant left arm pain in association with her keloids."

(2)  Marion Clinic Records (Tr. 673) - "This patient has bilateral large keloids on each upper arm region so perhaps the wrist cuff is best for because the keloids are incredibly painful for this patient."

(3)  Cahaba Center for Mental Health and Mental Retardation Records (Tr. 291-310) - Notes indicating Plaintiff had previously been diagnosed on multiple occasions with dysthymic disorder due to chronic pain.

(4)  UAB Medicine Records (Tr. 774) - Note indicating the following: severity of pain 10; described as constant and stabbing.

(5)  Dr. McKeown Records (Tr. 765, 772) – Records showing that the medications Dr. McKeown prescribed to Plaintiff were not relieving her pain, so Dr. McKeown instructed her to discontinue them. The notes also detail an "extensive discussion with patient regarding the limited options we have to offer at this time while encouraging her to follow up with her [primary care physician] to see if he might be aware of any other pain physicians or plastic surgeons who may have interventions to provide relief" and that the pain management physician requested a TENS unit, and did not give refills on any medication because "the patient assured us that she had adequate medication." [3]

(Doc. 18 at 3-5). Plaintiff also contends that both her protruding disc causing right sided radiculopathy and chronic keloids should satisfy this Circuit's pain standard. (*Id.* at 5). Defendant contends that the ALJ properly

---

[3] Plaintiff also asserts that this note contradicts the ALJ's reliance on Plaintiff's refusal of pain medications. However, as discussed herein below, there were multiple notations of Plaintiff's refusal of medication/treatment and it is evident that the ALJ's decision was not based solely on his alleged misinterpretation of this one visit.

9

assessed Plaintiff's credibility and, as he articulated, his assessment was based on substantial evidence. (Doc. 19 at 5-8.)

After extensively summarizing Plaintiff's testimony and medical records (Tr. at 21-25), the ALJ stated as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. Essentially, in many aspects, these are the same allegations denied by an administrative law judge in 2012. This is a younger individual who is obese and who has keloids; some have been excised/removed, but there are no signs of chronic infections related to the excisions. She testified she has Medicaid, so she has had access to medical care. Records do not document serious crises/complications relating to hypertension or diabetes. She is obese but has no advanced joint disease. There are back pain complaints but 2012 MRI showed only broad based protrusion at L4-5; neurosurgery records report she retains normal lower extremity strength and sensations with normal gait with retained ability to heel & toe walk. There is only mild dis disease per x-ray (Ex B1F pg 5). Right leg x-rays were normal in April 2014 per Ex B12F pg 43. Primary care records indicate there is some pain in the upper part of the body because of the keloid scarring, and the undersigned has assigned some restrictions to account for that non-debilitating pain. In fact, the undersigned has assigned some substantial exertional, postural, and environmental limitations to account for some keloid-related pain and her medication regimen; however, the record does not clearly demonstrate that the medication regimen is causing ***chronic substantial*** side effects that can reasonably be considered debilitating. Most notable, she has nearly SGA-level income for 2012 & 2013; that seriously undercuts her debilitating pain complaints. Also, she is raising underage children in her home. Records describe conservatively treated depression with varying diagnoses related to it. No psychosis is demonstrated per the latest counselor updates. A nurse practitioner notes no signs of depression or anxiety during checkup this summer.
>
> To assess the claimant's credibility, as directed by the Regulations, the undersigned has considered all of the available evidence, including testimony at the hearing and third party statements, and in light of

> this, the claimant is found to be less than credible. For, example, at the hearing, when questioned about the work performed after her alleged onset date, she testified that she did not perform the work for which she was paid. The undersigned finds this to be suspect at best. As a self-employed individual, it is highly unlikely that individuals would continue to pay the claimant for work she did not perform. Secondly, throughout the evidence, it is clear that the claimant elected to stop taking her prescribed medications, which reflects that her conditions were not as debilitation as alleged. Lastly, the claimant selected the date after her previous denials as her alleged onset date. She offers no plausible explanations why she feels that as of this date she was no longer able to work.

(Tr. at 25-26)(emphasis in original). The ALJ then went on to describe the discrepancies between Plaintiff's alleged pain and her medical records in relationship to her complained of impairments. In so doing, the ALJ explained that Plaintiff's complaints were inconsistent with the medical evidence of record relating to Plaintiff keloids, lumbar disc disease with spondylosis/osteoarthritis and chronic pain syndrome, diabetes mellitus, hypertension, dysthymic disorder vs. major depression, and obesity. (*Id*. at 26-27).

As an initial matter, it is clear that the ALJ extensively considered Plaintiff's medical records. Additionally, the ALJ's medical summary includes multiple references to Marion Clinic and Dr. Davis and, therefore, Plaintiff's allegation that the ALJ failed to cite those records is not compelling. The record also reflects that in determining the credibility of Plaintiff, the ALJ considered the seven factors utilized in the 11th Circuit, i.e.,

Plaintiff's activities of daily living[4], her treatment, medication regimen, and the side effects of her medication[5], the location, duration, frequency, and intensity of pain or other symptoms[6]; and measures other than treatment to relieve pain[7]. As a result, based on the record, it is evident that the administrative law judge did not ignore Plaintiff's testimony or the medical evidence of Plaintiff's pain. Rather, the ALJ determined that intensity, persistence and limiting effects of the pain she alleged was not credible when considered in the light of all the evidence. Moreover, the ALJ articulated the reasons for his determination that Plaintiff was not entirely credible.

Despite Plaintiff's contention that the ALJ ignored the seven factors he is required to consider when determining credibility, the ALJ's articulated reasoning addresses those very factors. Lastly, while Plaintiff points to multiple records which indicate that Plaintiff complained of or suffered from pain, there remains substantial evidence on which the ALJ relied in reaching

---

[4] S*ee* (Tr. at 22) ("by her own admission her condition did not interfere with her daily routine"); (Tr. at 25)("she is raising underage children in her home"); ("she has nearly SGA-level income for 2012 & 2013").

[5] *See* (Tr. at 22) ("she admitted she stopped taking her medication"), ("on at least two separate visits, when she reported increased pain, she refused the recommended treatment"); (Tr. at 23) ("she had since stopped taking any narcotic pain medication"), ("she admitted her that prescribed treatment afforded her significant relief with [sic] any sign or complaints of side effects from medication"), ("despite being offered a neurological consult, the claimant denied"), ("she was repeatedly cautioned about remaining compliant with prescribed treatment").

[6] *See* (Tr. at 22) ("her condition had improved, she rejected needing further treatment"), ("she remained treatment free [from September 2012] until January 2013"), ( "she expressed pleasure about her progress"); (Tr. at 23) (in "2012, she denied having any back, neck, joint or muscle pain"), (in "2013, […] the claimant admitted her back pain was resolved"), ("her complaints were treated conservatively"), (in "2012, examining physicians indicated the claimant's hypertension was resolved with treatment").

[7] See (Tr. at 24) ("he recommended a lifestyle change to improve her overall endocrine systems"), ("again, he advised she modify her lifestyle to improve her symptoms").

his determination. As a result, the undersigned finds Plaintiff's first contention of error to be without merit.

## B. Substantial Evidence

Plaintiff's second point of error is based on the fact that several portions of the transcript were either "inaudible" or incorrectly transcribed, resulting in a decision that cannot be based on substantial evidence. (Doc. 18 at 5-6). Plaintiff asserts that because the *entire* record is not before this Court, the Court cannot reach a decision as to whether the ALJ's decision is reasonable. (*Id.* at 6). In support of this assignment of error, Plaintiff points to six specific instances of inaudible testimony and also asserts there were "several other exchanges between the ALJ and the VE where portions of the VE's testimony were inaudible during key portions of his testimony". (*Id.*) Defendant acknowledges that the VE's testimony contains inaudible portions, but asserts that those inaudible portions did not diminish the record such that it could not be determined whether substantial evidence existed to support the ALJ's decision. (Doc. 19 at 8-10).

When taken in a vacuum, the inaudible portions referred to by Plaintiff appear to have an impact on the record. However, after reviewing the VE's testimony as a whole, the inaudible portions do not call into question whether substantial evidence exists because either (1) the inaudible portions do not cause confusion as to the testimony being provided or (2) because those portions are not pertinent to the VE's testimony and/or the ALJ's decision.

The first four inaudible portions cited to by Plaintiff relate to questions regarding Plaintiff's previous work and despite the inaudible portions, the content of the testimony is apparent. More specifically, the first inaudible portion is pulled from within the ALJ's explanation that there was a VE present at the hearing before the VE was sworn in and is not part of the VE's testimony. The next three portions all relate to the VE's testimony as to Plaintiff's previous jobs. While there are inaudible portions, the undersigns finds that those portions do not overcome the testimony as a whole. Further, to the extent that there was confusion, the ALJ summarized this part of the ALJ's testimony in his decision at step five as follows:

> The vocational expert classified the claimant's past work as hand packer […] which was medium unskilled work per the DOT but performed at light; self-employed day worker (DOT # 301.687-014) which was medium unskilled per DOT but light as performed; and self-employed hair cosmetologist (DOT # 332.271-010) which was light skilled with an SVP of 6 per DOT and SVP of 4 as performed. The expert testified that claimant could do the past work as a hand packer and a day worker as performed.

(Tr. at 27). The fifth inaudible portion of the transcript referred to by Plaintiff, while relating to Plaintiff's hypothetical RFC, is much lengthier than the excerpt cited by Plaintiff. (Doc. 18 at 5)("I don't see the keloids [INAUDIBLE] but that's going to be something she's redoing."). The full testimony states as follows:

> **ALJ**: Let's turn to a discussion of the possible capacity findings. We have a younger individual with an 11th grade education. She has unskilled up to skilled work, if you use the DOT, using an SVP of 4 as a production based on your experience and your testimony about

cosmetology. Let's take her vocational profile and look at light work first. Actually, there is restaurant work, and there's got to be some reduction. It's because of keloids, because of her issues with her weight, some of the back problems. That's going to take it to light, as opposed to medium, heavy, but at light, let's start, first with just occasional pushing and pulling with upper extremities. Rather than pushing and puling with the upper extremities, there would still be reaching abilities in a frequent range, so frequent reaching, but only occasionally overhead, so occasional overhead reaching, otherwise frequent reaching. Occasional pushing and pulling with the upper extremities, so there's those three things. Posturally, I want you to consider someone not able to climb ladders, ropes, or scaffolds. Part of that is a safety precaution. Some of that is really more tied to her actual physical limitation. I would also exclude the crawling. I don't see the keloids [INAUDIBLE] but that's going to be something she's redoing. Let's look at occasionally climbing ramps and stairs and occasional balancing. I also want you to consider someone needing to avoid concentrated exposure to extreme temperatures and all exposure to dangerous machinery and unprotected heights. Ms. Goree is primarily focused on physical symptoms, but she did talk about some nervousness. There's been some occasion of depression. She has been mental health clinic care at time, so I was thinking about one of the doctors from the state agency, Dr. Oestreich [phonetic] talked about simple work, so let me ask you, in addition to the range of light work I'm talking about in terms of physical, mentally, I want you to consider someone who going to simple, routine, competitive tasks where attention and concentration would be maintained for two-hour increments during the workday, and let's look at casual contact with the public. One of the things that the doctor said was that the claimant will encounter social restriction mainly when interacting with the general public. It's not exactly detailed and descriptive, so I'm going to ask you to consider casual contact with the public, which would give you something with more specificity. All right. So there's a lot for you to consider, but let's go over that. Branch of light work physically, with mentally and simple and routine tasks and casual contact with the public. What about hand packer, day worker, and cosmetologist?

**A**: {INAUDIBLE] day worker and hand packager, as she performed them, not as generally performed [INAUDIBLE] cosmetology work.

(Tr. at 59-61). Plaintiff may be correct that "it is impossible to know based on that statement alone [the one sentence including with the inaudible portion]

15

what weight he [the ALJ] gave in his RFC to the keloids in the hypothetical posed to the VE." (Doc. 18 at 5). However, it is clear that the ALJ's hypothetical and/or RFC were not based on that statement *alone*. Rather, the record reflects that the ALJ first diminished Plaintiff's abilities to light work "because of keloids, because of her issues with her weight, some of the back problems" and the provided other extensive limitations for the VE to consider. As a result, based on the entirety of transcribed hearing, including, the question and response above, Plaintiff's assertion that the "inaudible" portions rendered the record incomplete is not compelling. Further, as discussed above, the ALJ also summarized the VE's testimony as to Plaintiff's ability to perform her previous work such that there is no gap in the record. (See Tr. at 27)("The expert testified that claimant could do the past work as a hand packer and a day worker as performed."). As a result, the undersigned finds Plaintiff's second contention of error to be without merit.

### C. The Hypothetical Posed to the Vocational Expert

Plaintiff's third assignment of error is that the ALJ's hypothetical to the VE did not take into account all of Plaintiff's limitations. (Doc. 18 at 6-7). In reality, Plaintiff does not assert that the ALJ failed to include his RFC finding in the hypothetical posed to the VE but, rather, asserts that the RFC did not include all of Plaintiff's impairments and, therefore, the hypothetical posed did not include all of Plaintiff's impairments. More specifically,

Plaintiff asserts that the ALJ failed to include a portion of the opinion of Dr. Estock, who was accorded considerable weight by the ALJ, wherein Dr. Estock opined that Plaintiff "can adapt to occasional changes of routine for simple situations not calling for rapid or extensive changes in work tasks or procedures", which was not referenced in the RFC or hypothetical posed to the VE. (*Id*. at 7). Plaintiff further takes issue with the fact that there is no "sit/stand option" in the RFC even though the ALJ found Plaintiff's lumbar disc disease with spondylosis/osteoarthritis to be a severe impairment and asserts that the RFC is not sufficiently limiting because it failed to address Plaintiff's alleged severe pain. Defendant argues that the impairments allegedly omitted were not were not supported by the medical evidence of record and, therefore, the omission of those impairments in the RFC and the hypothetical posed to the VE was not error. (Doc. 19 at 10-11).

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3. The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946 (2015). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes that the social security regulations state that

Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 416.945(a)(3).

Plaintiff's assertions are not compelling. First, Dr. Estock's opinion was not given controlling weight due to his lack of treating relationship. (Tr. at 27). Next, the record reflects that the ALJ in determining Plaintiff's RFC, considered not just Dr. Estock's opinion, but also Plaintiff's testimony and the objective medical record as a whole. (Tr. at 20). Lastly, the ALJ articulated that Dr. Estock's assessment of mild to moderate mental health problems were consistent with Plaintiff's near SGA-level work income for two years, conservative mental health care, and lack of inpatient care (Tr. at 27; See also FN4) and Plaintiff has not pointed to any other evidence to support that she has additional mental limitations to negate the ALJ's RFC. Additionally, with regard to Plaintiff's sit/stand option, there is no medical evidence that Plaintiff could not sit/stand, other than her own subjective testimony which, as discussed herein above, the ALJ properly found to be less than credible. The same holds true for Plaintiff's subjective complaints of pain from keloids.

As a result, the undersigned finds that the record as a whole contains substantial evidence on with the ALJ relied in determining Plaintiff's RFC. Accordingly, despite Plaintiff's assertion that the RFC should have been more restricting, the undersigned does not find that the ALJ's RFC determination was in error.

The hypothetical posed to the VE was, likewise, not erroneous. For a vocational expert's testimony on the availability of jobs to constitute substantial evidence, "the ALJ must pose a hypothetical that adequately describes all the claimant's impairments and accurately reflects the claimant's educational level, age, work skills, and experience." *Lanier v. Commissioner of Social Security*, 252 Fed. Appx. 311, 314-15 (11th Cir. 2007)(*citing Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)); *see also Dial, supra*, 403 Fed.Appx. at 421 (where ALJ failed to include all of the claimant's "employment limitations in the hypothetical questions posed to the VE ..., the VE's testimony did not constitute substantial evidence upon which the ALJ could rely.").. However, the hypothetical question "need only include limitations supported by the record" and a claimant's "additional claimed impairments that [are] not supported by objective medical evidence" need not be included in the hypothetical. *Lanier*, 252 Fed. Appx. at 315.

In Plaintiff's case, the mental impairment supported by the objective medical evidence as stated in the RFC was as follows:

> […]Mentally, she can perform simple, routine, and repetitive tasks. She can maintain attention and concentration to perform such tasks for two-hour increments throughout the workday. She can have casual contact with the general public throughout the workday.

(Tr. at 20). The hypothetical posed to the VE (typed above in full) included mental restrictions based on "someone who going to simple, routine, competitive tasks where attention and concentration would be maintained for two-hour increments during the workday, and let's look at casual contact

19

with the public." (Tr. at 60-61). The ALJ was not required to pose hypotheticals to the VE with impairments that were not supported by the record. See *Lanier*, 252 Fed. Appx. at 315. As a result, the ALJ did not commit error by way of excluding Plaintiff's additional complained of impairments.

## CONCLUSION

Plaintiff has raised three claims in bringing this action and all three are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 23rd day of August 2017.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**